1

2

3

4

5

6

7

8       UNITED STATES DISTRICT COURT

9             EASTERN DISTRICT OF CALIFORNIA

10

TROAS VOLTAIRE BARNETT,          /   1:05-cv-01022-OWW-WMW (PC)
11                                       /
                Plaintiff,               /
12                                       /   ORDER DISMISSING SECOND AMENDED
          v.                             /   COMPLAINT WITH LEAVE TO AMEND
13                                       /
MANUEL TORRES, et. al.,                  /   (Doc. 27)
14                                       /
                Defendants.              /
15  _____/

16

17  **I.     SCREENING ORDER**

18         Troas Voltaire Barnett ("Plaintiff") is a state prisoner proceeding pro se and in forma

19  pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed his original

20  complaint on August 9, 2005.  (Doc. 1.)  On January 11, 2006, Plaintiff filed his first amended

21  complaint.  (Doc. 19.)  On January 10, 2007, the Court granted Plaintiff's motion to file a second

22  amended complaint.  (Doc. 26.)  Plaintiff thereafter filed his second amended complaint on

23  January 31, 2007 – which is currently before the Court.  (Doc. 27.)

24         **A.     Screening Requirement**

25         The Court is required to screen complaints brought by prisoners seeking relief against a

26  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

27  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

28  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

1

1  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

2  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

3  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

4  appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

5  1915(e)(2)(B)(ii).

6      A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

7  which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in

8  support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,

9  467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

10  Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

11  complaint under this standard, the court must accept as true the allegations of the complaint in

12  question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the

13  pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.

14  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

15      **B.      Summary of Plaintiff's Second Amended Complaint**

16      Plaintiff is a state prisoner at Kern Valley State Prison ("KVSP") in Delano, California.

17  Plaintiff complains of acts that occurred when he was housed at California Substance Abuse

18  Treatment Facility and State Prison ("SATF") in Corcoran, California and at California

19  Correctional Institution ("CCI") Tehachapi, California.

20      Plaintiff names as defendants: SATF Warden Derral G. Adams; SATF Correctional

21  Officers ("C/O") Manuel Torres, Angel Duran, Martin Gamboa, Johnny Mata, Harold Duncan,

22  David Andres, Jack Hill, Brad Tweedy, David Norman, Tracy Jackson, Michael Pallares, Jason

23  Barba, and John Does 1-6 & 18; David Smith; Doxie Facchinello; and John Does 8-10 & 12-17

24  who are "Medical Doctors, Registered Nurses, Medical Technical Assistants, Radiologists,

25  Orthopedic Specialists ... employed by" SATF and CCI.

26      Plaintiff alleges that: on November 4, 2003, while housed at SATF, he was subjected to

27  excessive force and his cell was ransacked by various correctional officers when he refused to

28  enter a single occupancy shower with his cell mate; after the attack, Plaintiff was taken to the

2

"CTC Emergency Room" where Doxie Facchinello cleansed and noted his wounds and John Doe #8 (Dr. D. Deering) stapled his head wound closed without prior testing, and released him for transfer from SATF to CCI; once at CCI, Plaintiff alleges he was not provided adequate follow-up medical care, nor was he provided due process as to his grievances and disciplinary hearing regarding the November 4, 2003 incident.  Plaintiff seeks declaratory, compensatory, and punitive damages.

It should be noted that Plaintiff's second amended complaint states approximately twenty-three (23) pages of semi-chronological facts, followed by nineteen (19) pages of legal argument and citations, ending with thirteen (13) pages of "Claims for Relief" – wherein Plaintiff requests a declaratory judgment and delineates which of his constitutional rights he believes were violated by various defendants' excerpted acts.  The Court screens the second amended complaint for cognizable claims based on the constitutional violations alleged in Plaintiff's "Claims for Relief."  The Court utilizes the delineations under Plaintiff's request for a declaratory judgment as a general framework for screening the second amended complaint, since they are the only place that Plaintiff states which of his constitutional rights he believes were violated by specific defendants, and some supportive facts.  However, statements in this screening order are not intended, nor are they to be construed, to provide any declaratory judgment in this case.

The Court provides Plaintiff with the following law that might apply to his claims.  However, it is Plaintiff's duty to specify his claims for relief against each defendant and their full factual basis.  The Court will not guess as to which additional facts Plaintiff believes support his alleged constitutional violation(s).  Plaintiff will be given opportunity to file a third (and final) amended complaint wherein he may be able to cure deficiencies noted herein.  Should he choose to file a third amended complaint, Plaintiff would do well to state each constitutional right he feels was violated, by which defendant(s), and delineate each fact upon which he bases his allegations – refraining from stating legal argument and superfluous facts.

**C.**   **Pleading Requirements**

**1. *Federal Rule of Civil Procedure 8(a)***

1    "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

2    exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534

3    U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a

4    short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R.

5    Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair notice of what the

6    plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz, 534 U.S. at 512.  A court

7    may dismiss a complaint only if it is clear that no relief could be granted under any set of facts

8    that could be proved consistent with the allegations.  Id. at 514.  "'The issue is not whether a

9    plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

10   the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and

11   unlikely but that is not the test.'"  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting

12   Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171

13   (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .

14   .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal

15   pleading standard . . . applies only to a plaintiff's factual allegations."  Neitze v. Williams, 490

16   U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

17   essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit Union Admin.,

18   122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

19   1982)).

20                     **2.  *Federal Rule of Civil Procedure 18(a)***

21   "The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to

22   relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

23   independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

24   against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A

25   against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated

26   claims against different defendants belong in different suits, not only to prevent the sort of

27   morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

28   pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

4

1    frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28

2    U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

3         Plaintiff is advised that if he chooses to file a third amended complaint, and fails to

4    comply with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that

5    are dismissed therein as strikes such that he may be barred from filing in forma pauperis in the

6    future.

7         **3.  *Linkage Requirement***

8         The Civil Rights Act under which this action was filed provides:

9              Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the
10             deprivation of any rights, privileges, or immunities secured by the
               Constitution . . . shall be liable to the party injured in an action at
11             law, suit in equity, or other proper proceeding for redress.

12   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

13   the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See

14   Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

15   (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

16   constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

17   in another's affirmative acts or omits to perform an act which he is legally required to do that

18   causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th

19   Cir. 1978).  In order to state a claim for relief under section 1983, Plaintiff must link each named

20   defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's

21   federal rights.

22        The facts listed in the second amended complaint imply that Plaintiff has discovered the

23   names of some Doe defendants.  However, in the second amended complaint, Plaintiff fails to list

24   any of these newly discovered defendant names in the caption, or in the section identifying the

25   parties to this action.  There are also a number of prison personnel that Plaintiff mentions within

26   the facts that are not named in the caption, or in the party identification section.  If Plaintiff

27   chooses to file a third amended complaint, he must appropriately identify the defendants in this

28   action so that service might be effected.  Further, Plaintiff is reminded to specify which

defendant(s) he feels are responsible for any/each given violation(s) of his constitutional rights.

### D. <u>Claims for Relief</u>

#### 1. *Excessive Force*

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994); <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); <u>see also</u> <u>Vaughan v. Ricketts</u>, 859 F.2d 736, 741 (9th Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim"). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." <u>Gordon v. Faber</u>, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), *aff'd,* 973 F.2d 686 (8th Cir.1992). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" <u>Farmer</u>, 511 U.S. at 834, 114 S.Ct. at 1977 (quoting <u>Rhodes</u>, 452 U.S. at 347).

The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether significant injury is evident. <u>Id.</u> at 9; see also <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir.2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" <u>Id.</u> at 9-10 (internal quotations marks and citations omitted). Although the Eighth Amendment protects against cruel and unusual punishment, this does not mean that federal courts can or should interfere whenever prisoners are inconvenienced or suffer *de minimis* injuries. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992) (8th Amendment excludes from constitutional recognition *de minimis* uses of force).

Plaintiff claims that on November 4, 2003, based on his refusal to enter a single

occupancy shower with his roommate, C/O Gamboa and C/O Duran sadistically and maliciously bludgeoned his skull with an aluminum flashlight and beat him with a service baton causing lacerations, extensive bleeding, and physical injuries so as to require staples and emergency medical attention.  This is a cognizable claim for excessive force against C/O Gamboa and C/O Duran.

Plaintiff alleges that C/O Torres observed the attack on Plaintiff by C/O Gamboa and C/O Duran and failed to intercede on Plaintiff's behalf.  This is a cognizable claim against C/O Torres as "[a] guard who stands and watches while another guard beats a prisoner violates the Constitution... ." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); and Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Plaintiff alleges that, as Plaintiff broke away and fled from C/O Gamboa and C/O Duran, C/O Torres used excessive force against him when he discharged, but did not apparently hit Plaintiff with, a non-lethal round from "the block gun."  This alone does not state a cognizable claim for excessive force against C/O Torres.

Plaintiff further alleges excessive use of force by various officers who responded to the incident with C/O Gamboa and C/O Duran.  When a prison security measure is undertaken in response to a incident such as occurred in this case, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Hudson v. McMillian, 503 U.S. 1, 4, 5-7 (1992).  Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted.  Whitley v. Albers, 475 U.S. 312  (1986).  Other factors to be considered are the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts know to them, and any efforts made to temper the severity of a forceful response.  Id., at 321.  The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force

authorized or applied was unreasonable, and hence unnecessary." Whitley v. Albers, *supra* at

319; see also, Hudson v. McMillian, 503 U.S. 1, (1992).  Prison administrators "should be

accorded wide-ranging deference in the adoption and execution of policies and practices that in

their judgment are needed to preserve internal order and discipline and to maintain institutional

security."  Id. at 321-322 (*quoting* Bell v. Wolfish, 441 U.S. 520, 547 (1970).

Plaintiff's claims of use of excessive force are not cognizable against: (1) C/O Barba for

twisting Plaintiff's toes inward and pushing his ankles to the ground while applying leg restraints

on Plaintiff; (2) C/O Hill for ordering C/O Duncan to place a nylon spit mask over Plaintiff's

open bleeding skull, while Plaintiff was coughing and attempting to breathe, subsequent to the

above altercation; (3) C/O Duncan for the manner in which he applied the spit mask to Plaintiff's

face which made it difficult for Plaintiff to breathe; (4) C/O Duncan for the tight manner in

which he applied the wrist constraints on Plaintiff; and (5) C/O Pallares for placing his knee in

Plaintiff's back while restraints were applied.

### 2. *Procedural Due Process*

#### a. *Prisoner Grievances/Appeals*

The Due Process Clause protects prisoners from being deprived of liberty without due

process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of

action for deprivation of due process, a plaintiff must first establish the existence of a liberty

interest for which the protection is sought.  "States may under certain circumstances create liberty

interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-

84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint

which "imposes atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life."  Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any

substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)

(citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza,

334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir.

2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action.  Buckley, 997 F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Plaintiff has no protected liberty interest in administrative appeals.  Thus, he fails, and is unable, to state cognizable claims relative to his administrative appeal(s) regarding the November 4, 2003 incident against: (1) John Doe #2 (A. Castro), Sgt. Jack Hill, and Sgt. David Andres for "failing to order the protection and integrity of the incident scene: recording of blood spills their locations at the incident scene, and the protection of the clothing in their original state...;" (2) John Doe #6 (K. Curtiss) for failing to interview Plaintiff and cancelling his administrative appeal; (3) David Norman, Brad Tweedy and John Doe #1 for failing to to document the condition of Plaintiff's clothes, blood loss at the scene, and the severity of Plaintiff's injuries; (4) Tracy Jackson for withholding the photos of the surgical placement of staples into Plaintiff's skull; (5) John Doe #3 (J. Prudhomme) and John Doe #7 (K. Lennon) for denial of the medical report and presentation of Plaintiff's clothes (presumably worn and soiled in the incident), the daily movement sheet and the CTC Emergency Room video; (6) John Doe #4 (A. Fouch) and John Doe #5 (D. Fulks) for failing to ensure the completeness and accuracy of the Incident Report; (7) John Doe #16 (K. Brown) for denying Plaintiff access to his medical records

1    regarding the incident; and (8) John Doe #11 (F. Schmidt) for condoning the cancellation of

2    Plaintiff's prisoner's appeal regarding the November 4, 2003 incident.

3                    ***b. Disciplinary Hearing(s)/RVR's***

4          The Due Process Clause protects prisoners from being deprived of liberty without due

5    process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of

6    action for deprivation of due process, a plaintiff must first establish the existence of a liberty

7    interest for which the protection is sought.  "States may under certain circumstances create liberty

8    interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-

9    84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint

10   which "imposes atypical and significant hardship on the inmate in relation to the ordinary

11   incidents of prison life."  Sandin, 515 U.S. at 484.

12         "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

13   panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418

14   U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural

15   requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours

16   between the time the prisoner receives written notice and the time of the hearing, so that the

17   prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they

18   rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses

19   and present documentary evidence in his defense, when permitting him to do so would not be

20   unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the

21   prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.

22   As long as the five minimum Wolff requirements are met, due process has been satisfied.

23   Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

24         "When prison officials limit a prisoner's right to defend himself they must have a

25   legitimate penological interest."  Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per

26   curiam) (concluding that prisoners do not have a right to have an independent drug test

27   performed at their own expense).  The right to call witnesses may legitimately be limited by "the

28   penological need to provide swift discipline in individual cases . . . [or] by the very real dangers

1  in prison life which may result from violence or intimidation directed at either other inmates or

2  staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525

3  (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir.

4  1987)(per curiam).

5      "[T]he requirements of due process are satisfied if some evidence supports the decision

6  by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy,

7  926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989);

8  Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824

9  F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th

10 Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of

11 liberty interest.)  "Some evidence" must support the decision of the hearing officer.

12 Superintendent v. Hill, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and

13 the relevant inquiry is whether "there is *any* evidence in the record that could support the

14 conclusion reached . . . ." Id. at 455-56 (emphasis added).  However, the "some evidence"

15 standard does not apply to original rules violation report where a prisoner alleges the report is

16 false.  Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).

17     Plaintiff alleges that his rights to procedural due process were violated by a number of

18 defendant actors.  However, most of Plaintiff's allegations do not rise to the level of cognizable

19 claims.

20     As to John Doe #2 (A. Castro), Sgt. Jack Hill, and Sgt. David Andres "failing to order the

21 protection and integrity of the incident scene: recording of blood spills their locations at the

22 incident scene, and the protection of the clothing in their original state...;" and as to David

23 Norman, Brad Tweedy and John Doe #1 failing to document the condition of Plaintiff's clothes,

24 blood loss at the scene, and the severity of Plaintiff's injuries – per Wolf, Plaintiff has a right to

25 present documentary evidence, not physical evidence; further, while spoliation of evidence can

26 provide basis for arguments before a fact finder, it does not rise to the level of a cognizable

27 constitutional violation.

28     Tracy Jackson's alleged withholding of photos of the surgical placement of staples into

11

1  Plaintiff's skull is documentary evidence which Plaintiff was entitled to present in his defense.

2  Thus, Plaintiff states a cognizable claim against Tracy Jackson.

3       Denial of access to Plaintiff's medical records regarding the incident by John Doe #16 (K.

4  Brown) prevented Plaintiff from presenting documentary evidence at his disciplinary hearing,

5  and thus is a cognizable claim.

6       The medical report and the daily movement sheet were documentary evidence which

7  Plaintiff was entitled to.  Thus, Plaintiff states a cognizable claim against John Doe #3 (J.

8  Prudhomme) and John Doe #7 (K. Lennon) for denial of this documentary evidence.  However,

9  presentation of Plaintiff's clothes (presumably worn and soiled in the incident), and the CTC

10  Emergency Room video are not documentary evidence and so Plaintiff had no right to utilize

11  them in presenting his defense.

12       Per Hines, Plaintiff has stated a cognizable claims for violation of his procedural due

13  process rights Plaintiff's claims against John Doe #4 (A. Fouch) and John Doe #5 (D. Fulks) for

14  failing to ensure the completeness and accuracy of the Incident Report and against Johnny Mata

15  for filing a false "chrono."

16       However, Plaintiff's claims against John Doe #7 (K. Lennon) for finding Plaintiff guilty

17  of the offense charged in the RVR regarding the November 4, 2003 incident without affording

18  Plaintiff relevant, exculpatory evidence in his defense at the disciplinary hearing is too vague to

19  rise to the level of a cognizable claim.  Plaintiff does not explain what the "relevant, exculpatory

20  evidence" was that he was not able to present.  Further, the guilty finding by K. Lennon is not

21  actionable as "[o]nly persons who cause or participate in the violations are responsible. Ruling

22  against a prisoner on an administrative complaint does not cause or contribute to the violation. A

23  guard who stands and watches while another guard beats a prisoner violates the Constitution; a

24  guard who rejects an administrative complaint about a completed act of misconduct does not."

25  George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645,

26  656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters,

27  97 F.3d 987, 992-93 (7th Cir.1996).

28       **3.  *Deliberate Indifference to Serious Medical Needs***

12

1    A prisoner's claim of inadequate medical care does not constitute cruel and unusual

2    punishment unless the mistreatment rises to the level of "deliberate indifference to serious

3    medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference"

4    standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in

5    objective terms, "sufficiently serious."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing

6    Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a

7    "sufficiently culpable state of mind," which entails more than mere negligence, but less than

8    conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.

9    A prison official does not act in a deliberately indifferent manner unless the official "knows of

10   and disregards an excessive risk to inmate health or safety."  Id.

11   In applying this standard, the Ninth Circuit has held that before it can be said that a

12   prisoner's civil rights have been abridged, "the indifference to his medical needs must be

13   substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this

14   cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing

15   Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or

16   treating a medical condition does not state a valid claim of medical mistreatment under the

17   Eighth Amendment.  Medical malpractice does not become a constitutional violation merely

18   because the victim is a prisoner."  Estelle v. Gamble, 429 U.S. at 106; see also Anderson v.

19   County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050

20   (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136

21   (9th Cir. 1997) (en banc).  Even gross negligence is insufficient to establish deliberate

22   indifference to serious medical needs.  See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir.

23   1990).  A prisoner's mere disagreement with diagnosis or treatment does not support a claim of

24   deliberate indifference.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

25   "A difference of opinion between a prisoner-patient and prison medical authorities

26   regarding treatment does not give rise to a §1983 claim."  Franklin v. Oregon, 662 F.2d 1337,

27   1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that the course

28   of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . .

13

1  that they chose this course in conscious disregard of an excessive risk to plaintiff's health."

2  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

3          Plaintiff states a number of allegations regarding the medical care he received for his

4  injuries sustained in the November 4, 2003 incident – most of which do not rise to the level of

5  cognizable claims.

6          Plaintiff's allegations that John Doe #8 (Dr. D. Deering) should have ordered x-rays and

7  documented the type of anesthetic used in his medical records before proceeding to shave, inject,

8  and perform "extensive operative procedures" on Plaintiff's skull, and should not have cleared

9  Plaintiff for transfer to CCI do not rise to the level of cognizable constitutional violations.  This

10 is merely a difference of opinion, and fails to show deliberate indifference by Dr. D. Deering to

11 Plaintiff's serious medical needs.

12         Plaintiff's allegations that John Doe #8 (Dr. D. Deering), John Doe #9 (D. Kyle); John

13 Doe #10 (R. Hernandez); John Doe #12 (J. Tyminski); John Doe #13 (R. Kumar); John Doe #14

14 (Suryadevara); and John Doe #15 (C. Hirsch) breached the standard of care as required for his

15 "severe serious skull injury, a dislocated right fourth finger, dislocated right ankle, and bilateral

16 hearing loss" are not cognizable since it merely alleges negligence and fails to show that any of

17 these defendants were deliberately indifferent to any of Plaintiff's serious medical needs.

18         Plaintiff further alleges that x-ray technician Jeffrey Childs "misrepresented the

19 radiographs of Plaintiff's injuries to his skull, right fourth finger, [and] right ankle...;" that Doxie

20 Facchinello deliberately falsified Plaintiff's medical records with regard to the severity of injuries

21 he sustained; and that John Doe #17 (M. Ramiscal) authored a medical report listing a non-

22 existent injury to the back of Plaintiff's skull.  This states cognizable claims against Jeffrey

23 Childs, Doxie Facchinello, and M. Ramiscal as "[a] necessary component of minimally adequate

24 medical care is maintenance of complete and accurate medical records. ... The harm that flows to

25 [inmate] class members from inadequate or absent medical records is manifest." Coleman v.

26 Wilson, 912 F.Supp. 1282, 1314 (E.D.Cal.1995).  Medical records that are "inadequate,

27 inaccurate and unprofessionally maintained" create "a grave risk of unnecessary pain and

28 suffering" in violation of the Eighth Amendment. Cody v. Hillard, 599 F.Supp. 1025, 1057

(D.S.D.1984).

**4. *Transfer***

Plaintiff alleges that Warden Derral G. Adams violated Plaintiff's Eighth Amendment rights when he authorized "the midnight transfer of Plaintiff ... just after extensive operative surgical procedures and the implantation of nine staples into Plaintiff's skull." Doc. 27, pg. 55.

Prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another.  Meachum v. Fano, 427 U.S. 215, 224-25 (1976).  Prisoners also have no liberty interest in their classification status, see Hernandez v. Johnston, 833 F.2d 1316, 1318 (9th Cir.1987), or in prison transfers, see Olim v. Wakinekona, 461 U.S. 238, 249 (1983), Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir.1988) (no right to transfer to prison near family); Beshaw v. Fenton, 635 F.2d 239, 246 (3d Cir.1980) (transfer to facility not easily accessible to prisoner's relatives does not implicates liberty interests protected by Due Process Clause), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3145, 69 L.Ed.2d 995 (1981).

Thus, Plaintiff fails, and is unable, to state a cognizable claim against Warden Derral G. Adams for authorizing Plaintiff's transfer to another facility.

**II.   <u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff's second amended complaint is dismissed, with leave to file a third amended complaint within thirty days.  If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his third amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

1      Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to

2  relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

3  independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

4  against an opposing party.'  Thus, multiple claims against a single party are fine, but Claim A

5  against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

6  claims against different defendants belong in different suits, not only to prevent the sort of

7  morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

8  pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

9  frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

10  U.S.C. § 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

11      Plaintiff is advised that it is inappropriate to attach exhibits to a complaint. See Rule 8,

12  Federal Rules of Civil Procedure.  Further, the Court cannot serve as a repository for the parties'

13  evidence.  Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.)

14  should not be submitted until the course of litigation brings the evidence into question (for

15  example, on a motion for summary judgment, at trial, or when requested by the court).  At this

16  point, the submission of evidence is premature as Plaintiff is only required to state a prima facie

17  claim for relief.  Thus, in amending his complaint, Plaintiff should simply state the facts upon

18  which he alleges a defendant has violated his constitutional rights and refrain from submitting

19  exhibits.

20      Finally, Plaintiff is advised that Local Rule 15-220 requires that an amended complaint be

21  complete in itself without reference to any prior pleading.  As a  general rule, an amended

22  complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

23  Once Plaintiff files an amended complaint, the original pleading no longer serves any function in

24  the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

25  involvement of each defendant must be sufficiently alleged.

26      Based on the foregoing, it is HEREBY ORDERED that:

27      1.     Plaintiff's second amended complaint is dismissed, with leave to amend;

28      2.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

1    3.      Within **thirty (30) days** from the date of service of this order, Plaintiff must

2            either:

3            a.      File an amended complaint curing the deficiencies identified by the Court

4                    in this order, or

5            b.      Notify the Court in writing that he does not wish to file an amended

6                    complaint and wishes to proceed only on the claims identified by the Court

7                    as viable/cognizable in this order; and

8    4.      If Plaintiff fails to comply with this order, this action will be dismissed for failure

9            to obey a court order and for failure to state a claim.

10

11   IT IS SO ORDERED.

12   **Dated:   August 13, 2008**                    _____/s/  **William M. Wunderlich**_____
                                                     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28